*In re* PETITION TO ANNEX CERTAIN TERRITORY TO THE VILLAGE OF SOUTH BARRINGTON—(NATIONAL BANK OF AUSTIN, as Trustee, *et al.,* Objectors-Appellants.)

(No. 56126;

First District—September 20, 1972.

BURMAN, J., dissenting.

John M. Daley and Jack M. Siegel, both of Chicago, for appellants.

King, Robin, Gale & Pillinger, and Kreger & Karton, both of Chicago, (J. William Braithwaite, Stanley N. Gore, and Donald J. Kreger, of counsel,) for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Objectors, Winston Development Corporation and National Bank of Austin, as trustee under Trust Number 4657, appeal from the order of the Circuit Court of Cook County which found that the Petition for Annexation was valid.

On appeal the objectors contend:

(1) That the petitioners did not meet all the requirements of the annexation statute;

(2) That the affidavit of DiMonte was insufficient to make a prima facie case;

(3) That the property sought to be annexed was not contiguous to South Barrington; and

(4) That the annexation statute was unconstitutional as applied to the objectors' property.

On February 17, 1970, the annexation petition was filed with the Clerk of the Circuit Court of Cook County. On February 19, 1970, notice of the proposed annexation was published in the Barrington Courier Review. There was no newspaper published in South Barrington. The Barrington Courier Review has a general circulation in the annexing municipality and territory. Petitioners own over 155 acres within the area sought to be annexed. Objectors own approximately 150 acres within the area sought to be annexed.

■■ The objectors' first contention was that the petitioners did not meet all the requirements of the annexation statute. The objectors contend that a copy of the newspaper notice was not filed with the clerk of the annexing municipality and that the notice of the annexation petition hearing was not properly published.

The statute involved specifically states in pertinent part:

"* * * This notice shall be given by publishing a notice thereof at least once in one or more newspapers published in the annexing municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the annexing municipality and territory. A copy of this notice shall be filed with the clerk of the annexing municipality." Ill. Rev. Stat. 1969, ch. 24, par. 7—1—2.

The objectors rely on *People ex rel. Hopf v. Village of Bensenville,* 132 Ill.App. 907, 272 N.E.2d 50, for the proposition that notices required by the annexation statute are mandatory and that failure to give the required notice to the village clerk was fatal. In the *Hopf* case, the statute involved specifically stated that "no annexation of such land is effective unless service is had and the affidavit filed as provided in

this section." (Ill. Rev. Stat. 1969, ch. 24, par. 7—1—1.) It was clear from the language of the statute in question in the *Hopf* case that failure to comply with its provisions was fatal. In the case at bar there was no mandatory language which stated that annexation was ineffective unless a copy of the published notice was filed with the clerk of the annexing municipality.

■■ It was uncontroverted that notice of the hearing on the annexation petition was published in the Barrington Courier Review. Objectors contend petitioners failed to establish that there was no newspaper published in South Barrington and therefore a jurisdictional element was missing. In the annexation petition the petitioners stated that there was no daily or weekly newspaper published in the annexing municipality, but that the Barrington Courier Review was a weekly newspaper having a general circulation within both the annexing municipality and the territory to be annexed. Objectors introduced no evidence that there was a daily or weekly newspaper published in the Village of South Barrington. The objectors were not prejudiced in any way by the petitioners' conduct in fulfilling the notice requirement of the annexation statute.

■■ The objectors contend that the legal description of the property in the annexation petition was defective. Objectors rely on *People v. Astle*, 337 Ill. 253, 169 N.E. 185, which held that where the description of the property contains a patent ambiguity, the uncertainty in the description cannot be cured by extrinsic evidence. In the *Astle* case, the lines constituting the boundaries did not meet and therefore the lands of the conservancy district were not completely enclosed as required.

In the case at bar, the boundaries met and enclosed the land in question. The surveyor testified that he was unable to definitely ascertain the boundaries of the area from the legal description alone. The surveyor also testified that he could definitely ascertain the boundaries of the area by checking the legal descriptions in the recorder's office and making a field survey. The Supreme Court in *People v. Knapp*, 28 Ill.2d 239, 246, 190 N.E.2d 774, stated that:

> "Descriptions of municipal boundaries are not construed with the same strictness as are those contained in deeds and contracts, and if the description in a petition to incorporate fairly apprises the public of the property involved, it will be considered sufficient. *People ex rel. Village of Worth v. Ihde*, 23 Ill.2d 63."

In *Gard v. Bosch*, 4 Ill.App.3d 828, 281 N.E.2d 788, the court at pages 831 and 832 said:

> "As a general rule the precision required of a legal description of real estate depends upon purpose of the document, the risk of harm and the likelihood that the parties dealing with such

document will be misled, injured or prejudiced. Descriptions of municipal boundaries do not require the same specificity as may be required in deeds. (*People ex rel. Cameron v. Neu*, 214 Ill. 287, 73 N.E. 362)."

The legal description and map contained in the annexation petition fairly apprised the public of the property to be annexed and therefore was sufficient.

■■ The objectors' second contention was that the affidavit of DiMonte was insufficient to make a *prima facie* case. The statute involved states in pertinent part:

"All petitions shall be supported by an affidavit of one or more of the petitioners, or some one on their behalf, that the signatures on the petition represent a majority of the property owners of record and the owners of record of more than 50% of land in the territory described and a majority of the electors of the territory therein described. Petitions so verified shall be accepted as prima facie evidence of such facts." Ill. Rev. Stat. 1969, ch. 24, par. 7—1—4.

DiMonte's affidavit reads as follows:

"The undersigned, being first duly sworn, deposes and says that he is one of the petitioners whose signature is subscribed to the foregoing petition, that the persons signing the petition constitute a majority of the property owners of record, the owners of record of more than fifty per cent of land in the territory described and a majority of the electors of the territory therein described. The undersigned further states that the allegations of said petition are true."

The court in *In re Petition to Annex Certain Territory*, 33 Ill.App.2d 38, 178 N.E.2d 895, stated that as a general rule the averments of an affidavit which conform literally to the language of the statute prescribing them are sufficient. The trial court heard DiMonte's testimony concerning the petition and the petitioners. DiMonte testified that William and Ann Emerson were electors within the territory in question. DiMonte also testified that Alexander Stillman was a registered voter within the territory in question.

The petition for annexation as a whole was supported by DiMonte's affidavit. Paragraph 8 of the annexation petition counterparts stated that "this petition may be executed in two or more counterparts, all of which shall together constitute one and the same petition."

The objectors have failed to meet their burden to prove that the matters sworn to in the affidavit were not true. We conclude that DiMonte's affidavit sufficiently states all matters required by Section 7—1—4 of the

annexation statute to constitute the petition *prima facie* evidence of such facts and require the objectors to overcome the *prima facie* case so made.

The objectors' third contention was that the property sought to be annexed was not contiguous to South Barrington. The statute requires that the property to be annexed must be contiguous to the annexing municipality. Ill. Rev. Stat. 1969, ch. 24, par. 7—1—1.

■■ Certain general principles have been settled by the cases in which we have defined the term "contiguity" as used in the statute. "Contiguity" means a touching or adjoining in a reasonably substantial physical sense, however, the line of demarcation between the reasonableness or unreasonableness of a contiguity must be drawn from the facts of each case. (*Western Nat. Bank of Cicero v. Village of Kildeer*, 19 Ill.2d 342, 352, 167 N.E.2d 169.) The finding of the trial court as to contiguity or lack of it will not be disturbed on appeal unless it is manifestly against the weight of the evidence. (*La Salle Nat. Bank v. Village of Burr Ridge*, 81 Ill.App.2d 209, 217, 218, 225 N.E.2d 33.) Irregularity of the resulting boundaries in itself is not a fatal defect in determining contiguity to a village. *Western Nat. Bank of Cicero v. Village of Kildeer, supra,* at page 351; *In re Annex. Terr. to Village of Buffalo Grove*, 128 Ill.App.2d 261, 265, 266, 261 N.E.2d 746.

■■ In the case at bar the land to be annexed touched the annexing village for over 3700 feet. The court in *In re Ordinance No. 491, Annexing Territory to Loves Park*, 89 Ill.App.2d 284, 232 N.E.2d 144, held that a common boundary of 835 feet constituted contiguity.

The objectors rely on *People ex rel. Cooper Realty v. Burr Ridge*, 81 Ill.App.2d 203, 225 N.E.2d 39, and *People ex rel. Adamowski v. Village of Streamwood*, 15 Ill.2d 595, 155 N.E.2d 635, which both deal strictly with street annexations and therefore do not apply to the case at bar. *Wild v. People ex rel. Stephens*, 227 Ill. 566, 81 N.E. 707, is easily distinguished from the case at bar since part of the annexed territory consisted of many strips, one of which was only 50 feet wide. In the case at bar the narrowest point is 330 feet wide and the annexed area is not made up of strips.

Objectors contend that the term "contiguity" should be given the interpretation of requiring unity of purpose and facilities in addition to the well recognized necessity of reasonably substantial physical touching. The objectors rely on *People ex rel. South Barrington v. Hoffman*, 30 Ill.2d 385, 198 N.E.2d 97, as requiring unity of purpose and facilities in addition to substantial physical touching in order to have contiguity. The court in *In re Annex. Terr. to Village of Buffalo Grove*, 128 Ill.App. 2d 261, 272, 273, 261 N.E.2d 746, interpreted the *Hoffman* case as not establishing the additional requirement of unity of purpose and facilities.

If there is reasonably substantial physical touching, there is contiguity.

In the case at bar, the property to be annexed substantially physically touches the annexing municipality and therefore the properties are contiguous.

The objectors' fourth contention was that the annexation statute was unconstitutional as applied to the objectors' property. The statute involved specifically states in part:

> "A written petition signed by a majority of the owners of record of land in such territory and also by a majority of the electors, if any, residing in such territory, shall be filed with the Circuit Court Clerk of the county in which the territory is located, or the corporate authorities of any such municipality may initiate the proceedings by enacting an ordinance expressing their desire to annex such described territory; provided, no tract of land in excess of 10 acres in area may be included in the ordinances of a municipality initiating the proceedings without the express consent of the owner thereof unless the said tract (1) is subdivided into lots or blocks or (2) is bounded on at least 3 sides by lands subdivided into lots or blocks; a tract of land shall be deemed so bounded if it is actually separated from such subdivision only by the right-of-way of a railroad or other public utility or at a public highway." Ill. Rev. Stat. 1969, ch. 24, par. 7—1—2.

The objectors contend that tracts of land in excess of 10 acres could not have been included in an annexation proceeding initiated by South Barrington, but that any number of acres could have been included in an annexation proceeding initiated by property owners within the area to be annexed. Objectors contend that the distinction between municipalities and property owners was unconstitutional and void. It was conceded that the legislature can classify, but the classification must not be arbitrary and unreasonable.

■■ "If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects." *People ex rel. the County of DuPage v. Smith,* 21 Ill.2d 572, 578, 173 N.E.2d 485.

The classification involved in section 7—1—2 of the annexation statute was adopted in order to prevent the owners of small parcels of land from forcing hundreds of acres of land into a municipality. Under the municipality ordinance procedure the final decision as to an annexation rests with the vote of the electors in the area. Under the petition method of annexation the 10 acre provision is unnecessary because the petition-

ers must be the owners of over 50% of the land to be annexed. The petition method of annexation protects the owner of large tracts of land from being forced into a municipality against his will.

■■ We find that the statute preventing involuntary annexation of more than 10 acres in an ordinance initiated annexation and omitting such provision in a petition initiated annexation is not unreasonable and arbitrary.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

LYONS, J., concurs.

Mr. JUSTICE BURMAN dissenting:

I am unable to agree with the majority because (1) the petitioners, in my opinion, have not shown full compliance with the notice provisions of the annexation statute, (2) the description of the property contained in the Petition is insufficient to locate the property with certitude, (3) the testimony at the hearing of the maker of the affidavit attached to the Petition rebutted its *prima facie* validity, and (4) the entire property is not contiguous to the Village of South Barrington (hereafter referred to as South Barrington) within the meaning of the statute.

The Petition for annexation, which had been circulated by Eugene A. DiMonte, was filed on February 17, 1970. DiMonte, who owned approximately 40 acres of land included in the Petition, contracted to purchase his property in October of 1969 and took title early in 1970. He was aware at that time of the proposal which was pending before the Cook County Zoning Board of Appeals for a planned development of the property adjacent to his land by the Winston Development Corporation (hereafter referred to as Centex-Winston).

A petition for annexation must contain the signatures (1) of more than 50% of the owners of record of the property included, (2) of more than 50% of the electors residing in the territory sought to be annexed, and (3) of the owners of more than 50% of the land included in the petition. Sections 7—1—2 and 7—1—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, pars. 7—1—2 and 7—1—4). In order to meet the minimum statutory requirements the petitioners who represent only slightly more than 50% of the ownership interests, put together a gerrymandered, irregular, misshapen, and illogical parcel of land which depends for its purported contiguity upon a corridor with dimensions of 130′ (N-S) × 330′ (E-W).

Slightly less than 50% of the land included in the Petition is owned by

the objectors, Centex-Winston and Carl G. Klehm. Centex-Winston owns and has contracted to purchase land which when combined has an area of 432 acres of which approximately 110 acres are included in the proposed annexation. At the time of the hearing, there was pending before the Cook County Zoning Board of Appeals an application for a planned development by Centex-Winston for the entire 432 acres. The effect of the annexation, if completed, would be to prevent affirmative action on the application. Carl G. Klehm owns some 550 acres of which approximately 50 are included in the proposed annexation. Residences on Klehm's property which face Penny Road, an east-west roadway, are excluded from the proposed annexation, even though further east, land on both sides of the road is included and even though land, south of the residences on Klehm's land is included. The purpose of this is to exclude potential electors. Klehm testified that the proposed annexation, if completed, would divide his property and would prevent its effective development. Since both Centex-Winston and Klehm own more than 10 acres of land, South Barrington could not have instituted proceedings for annexation by ordinance without the consent of these owners. See: Section 7—1—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 7—1—2); *In re Petition of the Town of Normal,* 5 Ill.App.3d 363, 283 N.E.2d 44.

The irregularity in shape of the 18 sided parcel which the petitioners seek to annex is not explained by the geography of the area, nor by man made factors such as roads, nor by the boundary lines of the owners' properties. The parcel touches the western boundary of South Barrington for a distance of 3700 feet; and it can be best described as a series of five rectangles in which as one moves from east to west the north-south dimensions become progressively smaller, and the east-west dimensions become progressively larger. The first of these rectangles measures 3700' (N-S) $\times$ 330' (E-W), and the fifth measures 850' (N-S) $\times$ 2625' (E-W). Attached to the westernmost boundary of the fifth rectangle is a trapezoid with a north-south dimension of 1375 feet and with parallel east-west dimensions of 500 feet and 1200 feet. The first rectangle extends beyond the northern boundary of South Barrington for 130 feet. Attached to this corridor is the southwest corner of another rectangle with dimensions of 1375' (N-S) $\times$ 1625' (E-W). The southern border of this rectangular lot is separated from the northern boundary of South Barrington by a distance which varies between 130 feet and 375 feet. (All dimensions are approximations).

The power to annex unincorporated areas into existing municipalities is derived from statute, and in order to annex territory validly all of the statutory provisions must be followed. (*Scheuer v. Johns-Manville Prod-*

*ucts Corp.*, 330 Ill.App. 250, 70 N.E.2d 876.) The requirements of the statute are mandatory and must be met in order to confer jurisdiction upon the court in annexation proceedings. *Crocher v. Abel*, 348 Ill. 269, 180 N.E. 852.

Section 7—1—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 7—1—2), provides in relevant part with reference to notice:

> "The petitioners or corporate authorities, as the case may be, shall give notice of the annexation petition or ordinance, as the case may be, not more than 30 nor less than 15 days before the date fixed for the hearing. \* \* \* This notice shall be given by publishing a notice thereof at least once in one or more newspapers published in the annexing municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the annexing municipality and territory. *A copy of this notice shall be filed with the clerk of the annexing municipality.*" (Emphasis added.)

The record shows that no evidence of filing a copy of the published notice with the Clerk of South Barrington was introduced at trial, and that the proofs were never reopened for the purpose of remedying this deficiency. The failure to prove that such notice was given in the manner required by the statute renders the entire proceedings invalid. In *People ex rel. Hopf v. Village of Bensenville*, 132 Ill.App.2d 907, 272 N.E.2d 50, the Appellate Court held an annexation invalid where notice of the proposed annexation was not given as required by Section 7—1—1 of the Illinois Municipal Code. Ill. Rev. Stat. 1969, Ch. 24, par. 7—1—1.

Proceedings for the annexation of unincorporated land into an existing municipality may be initiated in two ways, either by the filing of a petition by property owners in the unincorporated territory or by the passage of an ordinance in the annexing municipality. (Section 7—1—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, Ch. 24, par. 7—1—2).) Under both methods notice of the proceedings must be published and a copy of the published notice must be filed with the clerk of the annexing municipality. The filing of a copy of the published notice not only informs the municipality of the proceeding, but also provides a readily accessible location for interested parties to learn the details of the proposed annexation. It is to achieve this second goal that notice is required in annexation proceedings initiated by ordinance as well as in proceedings initiated by petition. The requirement for filing a copy of the published notice of annexation proceedings with the clerk in the annexing municipality is an integral part of the provision for notice, and it is mandatory.

Section 7—1—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1969,

Ch. 24, par. 7—1—2), also provides that notice shall be given by publication in a newspaper published in the annexing municipality or "if no newspaper is published therein, then in one or more newspapers with a general circulation within the annexing municipality and territory." The Petition alleged that there was no newspaper published in South Barrington, but that the Barrington Courier Review had a general circulation within South Barrington and the territory proposed to be annexed. The Petition was supported by an affidavit of Eugene A. DiMonte which stated that the allegations of the petition were true. Paragraph 17 of the objections filed by Centex-Winston stated, "That the notice of annexation petition was not given in the manner required by law." Once the issue of notice was raised by the objectors, it became incumbent upon the petitioners to prove by competent evidence that the notice was properly given. No evidence was introduced to show that no newspaper was published in South Barrington or that the Barrington Courier Review had a general circulation in the village or the territory proposed to be annexed. A Petition for annexation when accompanied by an affidavit is taken as *prima facie* evidence of certain facts relating to the signatories, but otherwise the petition is not evidence. (*McKeown v. Moore*, 303 Ill. 448, 135 N.E. 747.) The failure of the petitioners to prove the giving of the required notice renders all subsequent proceedings invalid.

According to Section 7—1—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, Ch. 24, par. 7—1—4), "If the court finds * * * (3) that the description is materially defective; * * * the court shall dismiss the petition or ordinance, as the case may be." The testimony of Carl Ritzel, a licensed land surveyor, indicates that the legal description contained in the Petition is not complete. This uncertainty cannot be cured by extrinsic evidence. (*Weber v. Adler*, 311 Ill. 547, 143 N.E. 95; *Rampke v. Beuhler*, 203 Ill. 384, 67 N.E. 796.) The westernmost boundary of the parcel sought to be annexed is designated as the "Easterly Right of Way line of the Elgin, Joliet, and Eastern Railway," and it is impossible from the legal description in the Petition to locate accurately the railroad right of way. Moreover, those portions of the roadways sought to be included were not properly described. It therefore follows that the Petition should have been dismissed because the description was materially defective. See: *People v. Astle*, 337 Ill. 253, 169 N.E. 185.

According to Section 7—1—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, Ch. 24, par. 7—1—4), a petition for annexation supported by an affidavit is *prima facie* evidence "that the signatures on the petition represent a majority of the property owners of record and the owners of record of more than 50% of land in the territory described and a majority of the electors of the territory therein described." The *prima facie* valid-

ity of the petition may be rebutted either by evidence that the affiant did not possess sufficient information with which to verify the allegations in the petition or by evidence that the allegations in the petition are inaccurate. Eugene A. DiMonte made an affidavit in support of the Petition in which he stated that the allegations of the Petition were true. The cross-examination of DiMonte at the hearing indicated that he did not have knowledge of the essential facts on which his affidavit was based. He did not know the total area involved and accordingly could not know that the signatories represented the owners of record of more than 50% of the land in the territory described. He did not know whether William and Ann Emerson or Alexander Stillman were listed as registered voters and consequently could not know whether they were electors. DiMonte, by his testimony on cross-examination demonstrated that he had no knowledge of the facts set forth in the affidavit, and consequently the *prima facie* evidence established by the verified Petition was rebutted. There being no other evidence of the facts alleged in the Petition other than the Petition itself and the affidavit, the Petition should have been dismissed.

The property sought to be annexed has a common boundary with the western border of South Barrington which extends for 3700 feet. This constitutes a touching in a reasonably substantial physical sense for that portion of the parcel lying west of South Barrington; however, a portion of the tract owned by DiMonte, is north of the village and connected only by a corridor with dimensions of 130 feet (N-S) by 330 feet (E-W). The southern border of the parcel connected by the corridor is separated from the northern boundary of South Barrington by a distance which varies between 130 feet and 375 feet. This 1300 foot strip between the DiMontes' property and the village and excluded from the proposed annexation constitutes a barrier which functionally separates the two. The DiMontes' property isolates this strip and is not contiguous to South Barrington since it does not touch the village in a reasonably substantial physical sense. See: *People v. Village of Streamwood*, 15 Ill.2d 595, 155 N.E.2d 635.

The effect of the annexation, if completed, would be to impede the development of two large parcels of land. The petitioners having failed to follow the requirements of the statute, the order of the Circuit Court should be reversed.